Our sixth case for this morning is Sanzone v. Gray. Sanzone v. Gray Mr. Morgan. Sanzone v. Gray Thank you, Chief Judge Wood, and may it please the Court. If a plaintiff can manufacture a jurisdictional defect by transforming a fact it admitted at the district court into a disputed fact on appeal, it will for all practical purposes mark the end of immediate appeals from the denial of qualified immunity. Because a plaintiff could always point to some fact that was material below and was undisputed and argue on appeal that that fact is now disputed, and any attempt to challenge that newly disputed fact on appeal would necessarily invite the sort of sufficiency of the evidence inquiry that would divest the Appellate Court of Jurisdiction. So we're talking in particular about the fact which you say was admitted at the district court level that Koster pointed a gun at Officer Gray. That's right. If you look at the record here, when Officer Gray moved for summary judgment on his qualified immunity defense, in his statement of undisputed material facts, he provided four eyewitness accounts, each of which confirms that Koster grew agitated with the SWAT team negotiator, raised his revolver in his right hand, and pointed it at the three officers standing in the right half of the door. What's this ballistic shield we're talking about here? Is it some big metal thing? The record doesn't show, I don't necessarily think, the material, but it does have statements about the size. The SWAT negotiator, Officer Rosenberg, talks about in his statement that when Officer Femster, who was holding the shield and was kneeled down on the ground, was in front of him, and then Rosenberg was kneeling behind Femster, Rosenberg said that the shield came up, covered basically his chest area. So his head was out over the shield and he was negotiating with the... So he could still see Mr. Koster at that point. Right. And then the two officers who were providing force coverage, the less lethal coverage from standing behind. So certainly there was some protection provided by the ballistic shield, but it certainly wasn't covering... But not their heads, for example. Correct. Correct. But even if we assumed that somehow that ballistic shield had them all in coverage, part of the problem here is that the estate hasn't come forward with any sort of case suggesting that officers in that situation are required to allow someone to empty a gun into that shield and hoping for the best that they don't get hit. And that's really the problem here, both the burden issue, right, it was the estate's burden to come forward with analogous authority, and it identified nothing suggesting that a police officer who is providing cover for someone who's negotiating with a possibly suicidal suspect, who becomes agitated and then points a gun at him, can't defend himself with deadly force. They haven't come forward with a single case. So let me ask you this question. Do you think the critical thing is that the fact that Acosta pointed a gun at the officers, or is it that the officers all perceived that a gun was getting ready to be pointed at them? I think it has to be the fact that the gun was pointed, because it's an objective analysis. That issue was addressed in the Weinman case, where an officer, it was kind of a weird scenario, an officer conceded that the gun wasn't pointed at him, but then argued that he perceived in the moment that it was. So I don't think that's, I think under the objective inquiry, it has to be the fact. So as you see it, because the fact was conceded below, not contested in summary judgment, and then cited in their own response to the summary judgment motion by quoting the deposition and not contesting that part of it, that if the fact that the arm was fully extended and the gun was pointed is there, then the legal question is this question of whether the officers provoked the person and put themselves in this situation by negotiating with someone when it had been a medical call, and your contention then is that the case law simply doesn't support that, that if the incident was at the officer's own making, that they're then deprived of the ability to defend. Right. What we argued below, certainly, was that there's plenty of authority that suggests that, and to take the Sheehan versus City and County of San Francisco case, a plaintiff cannot make out a Fourth Amendment claim by claiming that bad tactics led to a deadly encounter that could have otherwise been avoided. This court in the state of Williams held that it was not clearly established in 2015 whether pre-seizure conduct could make out a Fourth Amendment violation. If it wasn't established in 2015 when Williams decided, certainly it wasn't established in January of 2014 when Officer Gray was making that decision in the second or second and a half he had as the gun's coming up, whether he could use force. And that, of course, makes sense. We, as a society, ask police officers to do all sorts of dangerous things, including negotiate with someone who they think is suicidal and to try to get them to put the gun down. Of course, you could always avoid this situation if you just pack up and go home and leave him to his own devices, but there's no case law suggesting that the officers have to do that. And quite frankly, as a society, we ask officers to try to talk someone down in that situation. The unfortunate reality is when you put a team of police officers and a negotiator in that position, someone has to be there providing cover for the negotiator. And that person, in this instance, was Officer James Gray. He was the person designated as the term of art in the SWAT context as priority of shot. That doesn't mean to say that lethal force will be necessary, but it's a designation of you're the person who, if lethal force becomes necessary, it's your job to use it. So really I think the question we have are these two questions that the district judge pointed to with their expert. He suggested that the officers failed to remain in cover and that they failed to await and observe the result of the less lethal force. As we discuss in our briefs, the district court, nor the estate, they don't point to a single case that suggests that Officer Gray couldn't defend himself under these circumstances. And they point to the Salinger case, which is a case about police officers beating a handcuffed suspect with a flashlight. That doesn't put Officer Gray on notice of anything in terms of how he can handle himself in this particular circumstance. But more fundamentally, it's not just their failure to carry the burden. The problem here, I really think, runs deeper because there's all sorts of analogous authority here. Cases like this court's 2012 decision in the state of Escobedo, cases like Plotka-Svidrinski, this court's decision in Muhammad in the state of Williams, the Supreme Court's decision in Sheehan. And all of those cases seem to confirm not that the officer couldn't react the way he did here, but that he could. So I think it's even deeper than just a failure to carry the burden. Here there's plenty of analogous authority and the district court never explains how this could be one of those cases that's so obviously unconstitutional, it's beyond debate in light of those cases. There are no other questions at this time, I'll reserve the rest of my time. That would be fine. Mr. Williams. Thank you. Joe Williams on behalf of the estate. I'm a little perplexed at how we've gotten to this point in the argument with repeated statements throughout the brief that we conceded that Keith pointed a firearm at the officer. On page 16 of our underlying brief before the trial court, we said, quote, finally the record is clear. Keith did not personally threaten any police officer, rather he expressed his frustration with the officer's continued presence stating that he would fire a warning shot. We do not dispute that Mr. Koster, before he was killed, said, I'm going to fire a warning shot. If you'll recall, he had been there for about 90 minutes begging these officers to leave him alone. The officers testified in their depositions that they realized that the health situation was not emergent. They didn't suspect him of any crime. He repeatedly asked them to leave, and they wouldn't do it. They had five officers dressed for war over the threshold of his studio apartment, and he expressed his frustration saying, if you don't leave, I'm going to fire a warning shot. We never conceded. But what about the extension of the arm? You didn't dispute that in the summary judgment motion, and you did quote that testimony from Officer Gray. Let me take your statement about the testimony from Officer Gray. What we did was admit that Officer Gray's version of the facts is he pointed the gun at me. We don't dispute that that's Officer Gray's testimony. What we dispute is that the gun was actually pointed at him. But what evidence did you put in to show that a rational trier of fact could conclude otherwise? You've said in your brief, and obviously this is true, you're not going to find out from You know, what evidence? You have to have something. We do. We do, Your Honor. And there are three primary things that I think get us. Remember, we're at summary judgment. All we need is an inference. Yeah. That's all we need. First is Keith's final words, I'm going to fire a warning shot. The inference for Very interesting. This concept of what a warning shot is. And you're supposed to stand there and whiz one by your head. I'm sorry, Your Honor? You think a police officer is supposed to stand there until he shoots? No. See whether he's telling the truth? Your Honor, that's not what I'm saying. By its very definition, a warning shot is a shot at no one. It's a shot at the wall. But that's what Judge Bauer is saying. Does he think he's a good shot and he's going to aim it an inch above the guy's head? Or does he mean he's going to shoot into the ceiling? Or does he, I mean, for the police officer to be required to stand there while a test shot is being fired seems like a terrible rule, actually. Your Honor, we have to look at this from the totality of the circumstances. Well, I am looking at it, but one totality is that he actually says he's going to shoot. He calls it a warning shot, but he says he's going to shoot. Take that fact and couple it with a couple of other facts. Take it with the fact that Officer Gray testified that the reason I shot Mr. Koster is as he's saying, I'm going to fire a warning shot. He points the gun at me and I fire. The paramedic, Kerwin Martin, who was there on the scene, testified in his statement to Internal Affairs, I heard Mr. Koster say I'm going to fire a warning shot. One to two minutes later, I heard Officer Gray shoot Keith Koster. That cast serious doubt on the veracity of Officer Gray's statement. It's just like what this case said in Brown. In the Brown case, which was the consolidated appeal in the Esteta-Williams case, there, the mother was in the back of the trailer and did not see the interaction between the officers and her son. The officers said, we kicked the door open and told him to drop the knife. He didn't, and we shot him. But that puts a lot of weight on somebody's on-the-spot estimate of whether it was one or two minutes versus a few seconds. People say these things subjectively, but the commonality is that a shooting is about to happen. Your Honor, look at what Officer Gray actually said. He said, I heard a shot on my left. That was the beanbag. That's apparently the beanbag. Correct. Yeah. At that point, I don't consciously remember it, but I fired two to three rounds at the subject's head and fell backwards. When you take that into account, with the statement of the warning shot, with the statement about the timing of all this happened, a reasonable trier of fact can look at those facts and say, what happened was, he said he was going to fire a warning shot. Officer Gray heard that gun go off, and it scared him. He pulled the trigger. He said he saw the arm come to full extension, holding the gun, and others corroborated that. There are three other officers that corroborated that, but as we said in our brief, and I think a very salient quote from the D.C. Circuit is, only when lions have historians will hunters cease to be heroes. And this circuit has reiterated that point, saying, when the only civilian eyewitness left to contradict the officer's testimony is dead, we have to look very closely at internal inconsistencies between the officer's statements, the timeline. We have to look at all of those circumstantial facts, and circumstantial facts are enough to get by summary judgment. So you concede that if the gun was in fact, if that was an established fact, if no reasonable trier of fact would conclude otherwise, that you lose because the pointing of the gun at the officers was sufficient to make it reasonable for Officer Gray to shoot? Your Honor, I won't concede that point as we stand here today. What I will respond with is the cases would suggest that that could very well be a legal outcome in that situation. But the situation here is we don't, we've got facts that call that question into dispute. But how many of those facts did you bring, I want to go back to what the district court record was, because it looked to me as though the district court rationally could read the materials that you submitted as materials in which you weren't questioning that Kostner was pointing the gun, but maybe it was for a warning shot, or maybe it was for something else. But that overall, that pointing of the gun meant that no rational jury could, at a minimum it gave qualified immunity. We're really talking about qualified immunity, we're not deciding the merits here. But on the question whether shooting was an exercise of excessive force, Officer Gray is in the zone of decision making that qualified immunity protects. And your question, Your Honor, I'm sorry. The question is how much of what you're now saying, you particularly said it in your brief, were facts that might, I mean we would have to evaluate this, but at least according to you, facts that would allow a jury to think that there was a dispute about the extension of the arm, and about what was said, and about how much time went by, how much of that did you call to the district judge's attention in this precise way? In this precise way, we call to the attention the warning shot, the statement from Officer Gray, the timing issue, those were all facts that were designated to the trial court, and they were in our designation of evidence, and part of the record. In this case, this circuit has precedent, and it's found in Rule 56C3 that the court need consider only the cited materials, but it may consider other materials in the record. And if you look at what Officer Gray, he has pointed this court to several cases that say if the facts that the district court relied upon in reaching its conclusion are not necessarily apparent from the opinion, this court can do a review of the record, and a review of the facts that were designated to the court. The timing issue, I concede, was not specifically mentioned in our brief, but the statement from the EMT was designated to the trial court, as was every fact that is included in our  report. Counsel, it seemed like at the trial court, your focus was the legal issue of whether the officers would be deprived of the benefit of qualified immunity because the situation was of their own making, because of bad tactics, that that was really your focus at that time, not this factual dispute. I disagree. I disagree with that, Your Honor. The evidence that we put forward to the trial court and how we argued it really only makes sense if you recognize that we are disputing that he pointed the gun at him. When we tender the expert report of Roger Clark, which is discussed in the trial court's opinion below, Mr. Clark never finds that the gun was pointed at the officers. He also says that Officer Gray should have waited for the outcome of the less lethal munitions before discharging his weapon and killing Mr. Koster. That only makes sense if the gun was not aimed at the officers, because if the gun was aimed at the officers, as Mr. Morgan pointed out, there are a lot of cases, Dracus, all the cases he listed, that said if you point the weapon at the officer, it becomes a much easier case for this court to resolve. But the fact of the matter is, the district court specifically found a question of fact, and the fact that she did deprives this court of jurisdiction. If they want to take this appeal after we try the case, they can. But this court doesn't have jurisdiction to start re-evaluating questions of fact found by the trial court. All right. Thank you very much, Mr. Williams. Thank you, Your Honor. Mr. Morgan? Mr. Williams' argument highlights the difficult position that we're put in when this is sort of the tactic on appeal, to sort of switch a fact that was never disputed below. I can't come here and challenge for you the evidence he's now citing on appeal as to why he thinks that created a dispute, because if I do, it's now a sufficiency of the evidence question. It's exactly the question this court can't decide under Stinson. So to your point, Judge Wood, about where this was pointed out to the district court, look at the statement of material facts in dispute. It never even mentions the shooting, much less provides any evidence calling any of those for eyewitness accounts in a dispute. The statement of material facts in dispute ends with this statement from Sergeant Walters that he's going to fire less lethal coverage, and then it jumps forward and says Custer's dead. It never even talks about the shooting or where his office was. What she says, she identifies as questions of fact. Maybe there's another place I should look to, but at least on page 14 of her opinion, she says, she's looking at Graham. She says severity of the crime at issue, whether the suspect posed an immediate threat, whether the suspect was actively resisting arrest or attempting to evade arrest. And then there's just kind of a dash, and she says the court concludes that questions of fact remain that should be resolved by a jury, that it didn't start out as a criminal investigation, that the officers won't leave even though Custer wants them to. And then she says she's relying on, well, she's looking at the opinion of Clark. Right. So is your position that none of these are material facts? Correct. And this, so if we take those sorts of considerations, things like the fact that the officers didn't leave, things like, and she doesn't just rely generally on Clark's opinion. She identifies very clearly what two pieces of the opinion she's relying on, failure to remain in cover and failure to await and observe the result of the less lethal force. Our position is take all of it, accept all that is true. We have to under this posture. But when you look at the case law, when you look at Plakas, the state of Escobedo, and the state of Escobedo involved the same thing, where the plaintiff attempted to create a factual dispute about whether the gun was pointed at the officers on appeal. This court rejected it then, we would suggest it should here too. But when you take those facts as true, under, it's not just their failure to come forward with any case on their own, although that enough would do it, because they had the burden to overcome qualified immunity, but it's the fact that there's all sorts of relevant authority here that suggests that Officer Gray could do exactly what he did, and the district court doesn't even engage in that authority, much less explain to us how this is so clearly unconstitutional that it's the questions beyond debate. And without any analogous case, that would have to be the standard. So if there are no other questions at this time, I will. I see none. Thank you very much. Thanks to both counsel. Take the case under advisement.